## Commonwealth *v.* Coleman, Appellant.

*Criminal law—Obtaining property by false pretenses—Act of March 31, 1860, Sec. 111, P. L. 410—Indictment—Variance.*

An indictment for obtaining a promissory note by false pretenses sufficiently charges a misdemeanor, if it avers that the defendant conceived the design of cheating and defrauding the firm of which the prosecutor was a member; that in pursuance of such unlawful intent the defendant falsely and fraudulently represented the existence of certain facts, and that "by color and means of said false pretense and pretenses" the said defendant obtained from the firm of the prosecutor a promissory note "for the sum and of the value of five hundred and fifty-seven dollars and fifteen cents made by Young & Schmitt to the order of the Interstate Lumber Company, being then and there the property of the said Young & Schmitt, with intent to cheat and defraud, etc."

Where a magistrate in drafting an information inadvertently

states that the single transaction upon which the criminal charge was based occurred on the date when the information was made, and the indictment following the information incorporates the same date although the transaction was long prior in time, but within two years from the date when the bill was found, the variance will not prevent the Commonwealth at the trial from showing the transaction itself as set forth in the indictment, and its actual date.

On the trial of an indictment for obtaining a promissory note by false pretenses, the defendant is not entitled to show that at the time he secured the note from the firm of which the prosecutor was a member, such firm was indebted to the corporation of which the defendant was an officer, in a sum greater than the value of the note; and it is immaterial whether the note was converted to the personal use of the defendant, or to that of the corporation of which he was an officer.

Argued April 16, 1915. Appeal, No. 68; April T, 1915, by defendant, from judgment of Q. S. Allegheny Co., March Sessions, 1913, No. 150, on verdict of guilty in case of Commonwealth v. William A. Coleman. Before RICE, P. J., ORLADY, HEAD, HENDERSON, KEPHART and TREXLER, JJ. Affirmed.

Indictment for obtaining a promissory note by false pretenses. Before REID, J.

The information was as follows:

COMMONWEALTH OF PENNSYLVANIA

v.

W. A. COLEMAN.

*County of Allegheny, ss:*

Before me, the subscriber, a committing magistrate in and for the County of Allegheny, personally came V. J. Schmitt, who, upon oath duly administered according to law, deposes and says that at Pittsburgh, in the County of Allegheny, on the 24th day of February, A.

D. 1913, defendant aforesaid did unlawfully and fraudulently represent to affiant that he ordered a car of "white pine" lumber for the firm of Young and Schmitt of the City of Pittsburgh, Pennsylvania, to be shipped from Cloquet, Minnesota, and that said car of "white pine" lumber was then upon the railroad in transit to said firm of Young and Schmitt to be delivered at McKees Rocks Yards, and did deliver to affiant a paper purporting to be an original invoice of said car of lumber, and upon the strength of the said representations and delivery of said purporting invoice, affiant did execute and deliver unto the said defendant a promissory note of said firm of Young and Schmitt, payable to the order of The Interstate Lumber Co., of which firm defendant was general manager, payable three (3) months after date from date, in the sum of five hundred and fifty-seven and 15-100 ($557.15) dollars, said note being payment in full of the said supposed shipment of lumber, said note being discounted by defendant at the Real Estate Savings & Trust Company, of the North Side, Pittsburgh, Pa., and subsequently renewed and paid in full by the said firm of Young and Schmitt. Affiant further states that all said representations were false, malicious and fraudulent, and made for the purpose of deceiving, cheating and defrauding said firm of Young and Schmitt, as said car of lumber had not been ordered for said firm of Young and Schmitt, as represented by said defendant and said purporting invoice was not a true and correct invoice, but was a false and fraudulent one and was used for the sole purpose of misleading and deceiving affiant for the purpose of securing said note and the money procured thereby.

Complainant therefore prays and desires that a warrant may issue, and that defendant may be arrested and held to answer this charge of false representation, and further deponent saith not.

V. J. SCHMITT.

Sworn to and subscribed before me, this 24th day of February, A. D. 1913.

JOHN A. MARTIN,
*Alderman.*

The indictment following the information incorporated the date February 24, 1913, as the date of the transaction.

The defendant moved to quash the indictment on the ground of the variance between the date of the note and the date of the transaction as averred in the indictment. The court overruled the motion.

At the trial the court refused to permit the defendant to show that at the time he secured the note Young & Schmitt were indebted to the Interstate Lumber Company of which company he was an officer, in a sum greater than the value of the note.

Verdict of guilty upon which judgment of sentence was passed. Defendant appealed.

*Errors assigned* were various rulings and instructions and the refusal to quash the indictment.

*Frederick L. Kahl,* for appellant.—The allegation of a date is material and will be fatal if erroneous: Getty v. Shearer, 20 Pa. 12; Com. v. Miller, 6 Pa. Superior Ct. 35; Myers v. Com., 79 Pa. 308.

*Homer N. Young,* Assistant Dist. Atty., with him *R. H. Jackson,* District Attorney, and *A. H. Mercer,* for appellee.

OPINION BY HEAD, J., July 21, 1915:

It would be impracticable to attempt to consider in detail each one of the forty assignments of error. We shall therefore group them as they naturally group themselves about the few questions we think it necessary to briefly discuss.

The learned court below could not have quashed the

indictment.   It is entirely without defect apparent on
its face.   It clearly charges every essential ingredient
of the misdemeanor defined and prohibited by Section
111 of the Crimes Act of 1860.   It avers the defendant
conceived the design of cheating and defrauding the
firm or company of which the prosecutor was a member
or officer.   It alleges that, in pursuance of that unlawful
intent, the defendant falsely and fraudulently repre-
sented the existence of certain facts, and that "by color
and means of said false pretense and pretenses" the said
defendant obtained from the firm of the prosecutor a
promissory note "for the sum and of the value of five
hundred and fifty-seven dollars and fifteen cents made
by Young & Schmitt to the order of the Interstate Lum-
ber Company, being then and there the property of the
said Young & Schmitt, with intent to cheat and defraud,
etc."   No comment is necessary to show that this indict-
ment charged an offense.

Many of the assignments of error complained of the
rulings of the learned trial court admitting in evidence
the several exhibits tending to prove the transaction
complained of.   The general ground of these objections
and of the argument here advanced in support of them
is, they did not tend to prove the particular offense, if
any, charged in the indictment.   The theory of the
learned counsel for the defendant, upon which this entire
branch of his cases rests, arises from these facts.   The
information was made before the magistrate on Febru-
ary 24, 1913.   That officer, evidently by mistake, laid
the past transaction, the history of which is fully recited,
as having occurred on the same date on which he took
the information.   The pleader who drew the indictment,
obviously with the information before him, laid the trans-
action as of the date stated in the information.   The in-
dictment was found by the grand jury March 12, 1913.
Now upon the trial, the proof disclosed that although
the information was made in February, 1913, the trans-
action, out of which the defendant's alleged guilt arose,

actually occurred about May 1, 1911. That was within
the period of two years before the bill was found. The
whole of the evidence disclosed there had been but a
single transaction between the defendant and the prose-
cutor. The false representations of fact alleged to have
been made by the former were truly and accurately de-
tailed both in the information and the indictment.
These fraudulent representations, with the designed and
resultant consequence that the defendant obtained from
the firm of the prosecutor a promissory negotiable note
of the value of upwards of $500, constituted the gist of
the offense charged. Neither the particular day on
which the transaction occurred, nor the date of the
promissory note which was secured, was of the essence
of the transaction. The defendant at no time made any
application for a bill of particulars. The indictment did
not purport to set forth either a copy of the note which
had been fraudulently obtained or to state its substance
"according to its tenor and effect." In this respect the
pleader contended himself with the statement that the
false pretense resulted in obtaining from the defendant
a security of the value of $500 and upwards. As the
transaction was but a single one; as it was truly and
fairly recited both in the information and indictment,
we are wholly unable to perceive how the defendant
suffered any substantial injury because of the mistaken
date in both information and indictment. There was
therefore nothing to prevent the operation of the well-
established general rule that upon the trial of a defend-
ant for a misdemeanor, the Commonwealth may prove
its commission at any time within the statutory period
running back from the date when the bill was found.
In Com. v. Powell, 23 Pa. Superior Ct. 370, this court,
speaking by BEAVER, J., said: "Time was not of the
essence of the offense." He then quotes with approval
the following statement of the general rule in the lan-
guage of Sadler's Crim. Proc. 320: "A variation in
proof as to time is immaterial where time is not an es-

518  COMMONWEALTH *v.* COLEMAN, Appellant.

Opinion of the Court.  [60 Pa. Superior Ct.

sential ingredient of the offense. It is not necessary, however, except where time enters into the nature of the offense, to prove the exact time alleged. Any other time may be shown on the trial, if it is prior to the finding of the indictment and within the period prescribed by the statute of limitations." So again the same court, speaking by SMITH, J., in Com. v. Nailor, 29 Pa. Superior Ct. 271 said: "It is not necessary, however, to prove the time as laid, except when time enters into the nature of the offense, or the date is to be proved by matter of record, as when perjury is charged to have been committed in a proceeding in a court of record. It is sufficient that the date laid is one on which the offense might have been committed, and that the offense, if committed on such date, is by law punishable at the time of finding the indictment. Thus the date laid must be prior to the day on which the indictment is found; it must be within the period fixed by the statute of limitations for the finding of the indictment; and, in the case of a statutory offense, it must be subsequent to the enactment of the statute." We are of opinion, therefore, that the learned trial judge committed no error in receiving the various items of evidence which tended to establish the existence of the transaction averred in the indictment; nor in refusing those points proffered by the defendant's learned counsel craving a binding direction in his favor because of the alleged fatal variance between the allegations and the proof. All of these assignments are overruled.

The defendant further seriously complains of the action of the learned trial judge in refusing to permit him to offer, by way of defense, evidence tending to establish that, at the time the prosecutor's firm gave the note, it was indebted to the corporation of which the defendant was an officer, in a sum greater than the value of the note. It is to be remembered the issue on trial was between the Commonwealth of Pennsylvania and the defendant at the bar of a criminal court. It was in no sense the function of such a court in such a proceeding

to ascertain the state of the accounts between the firms or corporations Young & Schmitt and the Interstate Lumber Company. To undertake to have done so would at once have introduced a number of collateral issues which that court had no jurisdiction to determine. Even if it be conceded that the firm of Young & Schmitt was indebted to the Interstate Lumber Company, that fact in no sense justified or excused the alleged criminal act of the defendant in obtaining from them money or valuable securities by false pretense. When he did the acts which the statute declares constitute that misdemeanor, he committed an offense against the sovereignty of the Commonwealth and could be properly indicted and punished therefor without regard to the state of the accounts between two private firms or corporations. If the prosecutor or his firm, by reason of the false pretense of the defendant, was induced to give up its valuable property, it matters not to the State whether that property was converted to the personal use of the defendant or to that of some one else. The learned trial court of course had no right to inquire into the personal relations of the defendant with the corporation he was employed to serve. In what manner he manipulated its finances, we need not now know. It is significant that in the statement of the books of the lumber company, kept by or under the supervision of the defendant, which was offered in evidence and which purported to exhibit the account of Young & Schmitt with the lumber company, there does appear a credit in favor of the prosecutor's firm of $557.15 as of the date when the note in the fraudulent transaction was discounted. But it also appears that such credit but balanced an invalid and groundless charge of the same amount for the car of lumber which the prosecutor had ordered but which the lumber company had never bought, never delivered, and concerning which the false invoice and bill of lading were furnished by the defendant. Manifestly, if that be a correct statement of the books, the prosecutor's firm

received no credit at all for the proceeds of its note because, after such credit, balancing only the false charge, the account remained in fact as it had been before either item was entered. We are clearly of the opinion the learned trial judge was guilty of no error in refusing to permit the defendant to confuse the simple issue by an attempt to show the state of the accounts between the two companies so often named.

We can discover nothing else in the record of the trial that invites any special discussion and we deem it sufficient to say, after a careful examination of all of the assignments of error and the grounds upon which they rest, we are satisfied the case was properly tried and the judgment should not be disturbed.

The judgment is affirmed and the record is remitted to the court below with direction that the defendant appear therein to undergo such portion of the sentence imposed as had not been performed when the order of supersedeas in this case was entered.