Commonwealth *v.* Routley, Appellant.

126

Argued May 8, 1934.

Before TREXLER, P. J., KELLER, CUNNINGHAM, BALD-
RIGE, STADTFELD, PARKER and JAMES, JJ.

*Harry A. Estep*, and with him *James T. Philpott*,
for James E. Routley, appellant.

*John B. Nicklas, Jr.*, for Cedric C. Benz, appellant.

*E. T. Adair*, Assistant District Attorney, and with
him *Andrew T. Park*, District Attorney, for appellee.

OPINION BY KELLER, J., October 3, 1934:
These appellants were jointly indicted for, and con-

victed of, conspiracy to cheat and defraud the County of Allegheny. Routley, during the period of time involved, was assistant chief clerk to the county commissioners; Benz was chief clerk in the purchasing department of Allegheny County. The Commonwealth alleged, and produced evidence tending to prove, that they had wilfully and corruptly conspired together to use and apply county funds for the payment of gasoline and oil used in the operation of their individual automobiles. The method shown to have been used was along the following lines: The County of Allegheny duly contracted with Peoples Service Station for the supply of all the gasoline and oil required by it, during the year, at prices below the retail market. The gas and oil were to be delivered by the Service Station to such one of the nine gasoline filling stations, maintained by the county for its own use, as might be directed by the proper authorities. Routley and Benz had individual charge accounts with Peoples Service Station, and their purchases of gasoline and oil for use in their own cars were charged to their respective accounts. Payments were made by the county to the service station for gasoline and oil delivered, and to be delivered, by it for the county's use, and from time to time transfers were made, by Benz's directions, from these funds to be credited on the charge accounts of Routley and Benz, so that money paid by the county was thus used to pay their individual charge accounts for gas and oil. These were covered up so as to make it appear that the gasoline and oil had been delivered to the county at its North Park and South Park filling stations. The amounts thus credited to Routley's charge account from November 28, 1928, to December 31, 1931, totalled $2,416.46. Those credited to Benz's charge account during the same period were $669.29.

The statements of questions involved, which limit

the assignments of error to be considered, raise three questions:

(1) The sufficiency of the evidence to establish the conspiracy charged; (2) the validity of the defenses on the merits; (3) the statute of limitations.

(1) It was not necessary to show by direct evidence that the defendants had met and conspired together to cheat and defraud the county in the manner outlined above. This could rarely be done. It could be shown by evidence of overt acts done by them, and declarations by them, or one of them, which convinced the jury, beyond a reasonable doubt, that they had acted together in the matter, in pursuance of a common design and to effect a common and corrupt purpose: Com. v. Bartilson, 85 Pa. 482, 489; Com. v. Snyder, 40 Pa. Superior Ct. 485, 523; Com. v. Rothensies, 64 Pa. Superior Ct. 395, 405; Com. v. Fulton, 56 Pa. Superior Ct. 86, 88; Com. v. Spillman, 74 Pa. Superior Ct. 192; Com. v. Sanderson, 40 Pa. Superior Ct. 416, 473, 478; Roscoe on Criminal Evidence, p. 415; Underhill's Criminal Evidence, Secs. 716, 717. It was not denied that oil and gasoline, in the amounts stated above, which had been furnished to and charged against the defendants individually, were paid for out of county funds; nor that this had been done by Benz's directions. Benz, himself, testified that Routley had talked to him, at least twice, about taking care of his car in this way. Routley must have known that the gasoline so charged against him individually was being paid for by a transfer of the county's credits, and his continued acceptance of the benefits was evidence of his participation in the scheme. The method adopted, as testified to by the accountants called by the Commonwealth, showed a designed concealment of the facts from the county controller and the park officials, and Benz testified that it was done ''in a manner so that the office force at the park didn't know

whose orders were being used for the payment of this gasoline." A judgment in a criminal case will not be *arrested* because of insufficiency of evidence; the remedy is by motion for a new trial: Com. v. Bateman, 92 Pa. Superior Ct. 53, 56; Com. v. Hanley, 15 Pa. Superior Ct. 271, 277; Com. v. Schollenberger, 17 Pa. Superior Ct. 218; Sadler's Criminal and Penal Procedure, Sec. 517, p. 443. A careful review of the evidence satisfies us that there was sufficient evidence of a criminal conspiracy between the defendants to require the submission of the case to the jury; and that the court below did not abuse its discretion in refusing a new trial.

(2) The defendants, while admitting that county funds had been used to pay for gasoline and oil used in their private cars, denied any corrupt motive in such use, and averred they were justified in so doing because their cars were being used at the time on county business; and that Mr. Armstrong, the chairman of the board of county commissioners, had directed them to supply the gasoline for the cars and charge it to the park account. The learned trial judge, on this point, instructed the jury that before they could convict the defendants they must find that they were actuated by criminal intent; that what they did was wilfully and corruptly done. There was evidence on behalf of defendants that their cars were used extensively on county business; and the trial judge instructed the jury that if they found the cars were being used for county purposes it would not be right to make the defendants personally pay for the gasoline and oil; and, while they might believe the system was wrong, the defendants ought not to be convicted, if the gasoline was furnished to operate the cars for county purposes in the manner testified to by them. But the Commonwealth produced evidence that the defendants' cars were used for their own individual

purposes as well, and on errands, which though requested by Mr. Armstrong, were not on county business, but rather of a personal or political nature. It was shown that gasoline furnished Armstrong's wife, daughter and son, to the value of over $600, had been charged in Routley's account, and thus paid for by the county; and Benz's account included gasoline furnished one Pifer. Of course, Mr. Armstrong's directions to procure the gasoline, in this way, and pay for it by charging it against county funds, could not, in the absence of authority and action of the board, relieve the defendants of responsibility for their acts. It went, if believed, with the other evidence in the case, to the good faith and intent of the defendants. The questions raised were issues of fact, for the jury, not for this court; and having been resolved against the defendants, and their action being upheld by the court below, it is not for us to interfere: Koch v. Imhof, 315 Pa. 145, 172 A. 673. Our only duty is to determine whether the evidence was sufficient to support the jury's finding—not whether we would have made the same finding.

(3) The indictment charged that the offense was committed on the 5th day of September, 1930. A true bill was found at the June Session, 1932, within two years of the date fixed in the indictment. The evidence on the trial showed that the original order to credit the defendants' charge accounts against county moneys was given by Benz to the Peoples Service Station official in 1928, or more than two years before the finding of the indictment. Appellants contend that as the conspiracy started in 1928, an indictment had to be found within two years thereafter, and that, as this was not done, the prosecution is barred by the statute of limitations. In support of this contention they cite Com. v. Bartilson, 85 Pa. 482. They have misunderstood the rulings of that case. The

prosecution barred by that decision was covered by the first count of the indictment, which laid the commission of the offense charged as of a date more than two years before the finding of a true bill. But Mr. Justice PAXSON, in that case, said, "From this it is apparent that each renewal is a new offense; a repetition, it is true, of a former one, but still an offense for which an indictment would lie." The Supreme Court, in that case, ruled that while the first count, which alleged a conspiracy completed on December 20, 1874, or more than two years before the finding of a true bill, could not be sustained, the second count, which laid the offense within the two years, would be sustained, and that evidence of acts done prior to the statutory period might be given in evidence, provided they showed a conspiracy existing at the time charged in the indictment. The evidence in the present case showed that the practices begun in November, 1928 were continued up to December, 1931. Conspirators, by escaping prosecution for two years, do not secure immunity for their continued unlawful acts, done in furtherance of, or pursuance to, the conspiracy, after the two years have expired. A completed conspiracy must be prosecuted within two years after it *ceased;* but a conspiracy renewed by repetitions may be prosecuted, and indictment found, at any time within two years after the commission of the last offense, by charging the crime within the statutory period. While this conspiracy may have started in 1928, the evidence supported a finding that it was renewed, and the illegal gains participated in by the defendants, up to December, 1931. Hence the prosecution was not barred when the indictment charging the offense as of September, 1930, was returned a true bill at the June 1932, Session. See: Com. v. Strauss, 89 Pa. Superior Ct. 82, 91, 92; Com. v. Girardot, 107 Pa. Superior Ct. 274, 279, 163 A. 350; Com. v. Rothensies,

64 Pa. Superior Ct. 395, 405; Com. v. Sanderson, 40 Pa. Superior Ct. 416, 473.

Appeal to No. 8 April Term, 1935. The assignments of error are overruled and the judgment is affirmed, and it is ordered that the defendant appear in the court below at such time as he may be there called and that he be committed by that court until he has complied with the sentence or such part of it as had not been performed at the time the appeal in this case was made a supersedeas.

The same order will be entered in the appeal to No. 11 April Term, 1935.