Commonwealth *v.* O'Brien, Appellant.

Argued April 15, 1957. Before Jones, C. J., Bell, Chidsey, Musmanno, Arnold, Jones and Cohen, JJ.

110

*W. Edward Bushong, Jr.,* for appellant.

*Herbert C. Nelson,* Assistant District Attorney, with him *Edward E. DiJoseph,* District Attorney, for appellee.

OPINION PER CURIAM, May 27, 1957:

This appeal was allowed from a judgment of the Superior Court affirming the order of the Court of Quarter Sessions of Montgomery County in which the appellant's motion to quash an indictment brought against him was refused.

The appeal raises the following question: May a grand jury indict, without special permission of court, a defendant who, serving a prison sentence in another county, was not present at the preliminary hearing? The Superior Court rendered a decision on the merits reported in 181 Pa. Superior Ct. 382, 124 A. 2d 666 (1956).

It was not necessary for the Superior Court to have determined the substantive question. Unless a bill of indictment is defective on its face, when a defendant moves to quash an indictment prior to trial, and his motion is denied by the trial court, the court's order

is interlocutory and hence, not appealable. *Petition of Quay*, 189 Pa. 517, 542, 42 A. 199 (1899).

The Superior Court should, therefore, have quashed the appeal to it from the order of the quarter sessions court.

Appeal dismissed.

———

DISSENTING OPINION BY MR. JUSTICE MUSMANNO:

On October 21, 1953, a Justice of the Peace in Montgomery County held a preliminary hearing charging the defendant, John George O'Brien, with armed robbery, burglary, and violation of the Firearms Act. Testimony was heard, the Justice of the Peace rendered a decision holding the defendant for Court, a return was made to the Montgomery County Courts, the District Attorney submitted a bill to the Grand Jury, and the Grand Jury returned an indictment against the defendant on the charges mentioned. Everything seems to have been done regularly and in accordance with established procedure—with one important exception: the defendant was not present at the hearing! To have a hearing without the accused is like having a performance of Hamlet without the Dane; it is like serving dinner to a phantom guest.

What is a preliminary hearing? Bouvier's Law Dictionary defines it as follows: "The investigation by an authorized magistrate of the circumstances which constitute the grounds for an accusation against a person arrested on a criminal charge, with a view to discharging the person so arrested, or to securing his appearance for trial by the proper court, and to preserving the evidence relating to the matter. Practically, it is accomplished *by bringing the person accused,* together with witnesses, before a magistrate (generally a justice of the peace), who thereupon takes down in writing the

evidence of the witnesses, and *any statements which the prisoner may see fit to make.* 2 Leach 552. And see 4 Sharsw. Bla. Com. 296."*

Black's Law Dictionary defines a preliminary hearing in this language: "The hearing *given to a person accused of crime,* by a magistrate or judge, exercising the functions of a committing magistrate, to ascertain whether there is evidence to warrant and require the commitment and holding to bail of the person accused. See Bish. New Cr. L. §§32, 225."

The very word "hearing" imports a listening to, an auscultation of accusing evidence, but how can one listen to an accusation if he is not present? To say that there can be a hearing without the presence of the person accused is to me shocking, unless, of course, the accused waives a hearing, purposely absents himself or has fled the jurisdiction. Magna Charta, the Bill of Rights, and all the landmarks of human liberties in the English law are shining beacons of protest against ex parte proceedings.

Why was the defendant not present at the preliminary hearing in Montgomery County? The explanation is a very simple one—he was in prison in another County—Philadelphia. The Montgomery County authorities knew that the defendant languished in the Philadelphia County prison but they made no effort to have him released for the hearing, they made no arrangements to have him brought to Montgomery under guard, they did not even consider it worthwhile to notify him of the hearing. If this had happened in former Nazi Germany or in any of the Soviet countries, censure against the Nazi and the Bolsheviks would have been heavy and long continued. Why is there no censure here?

---

* Italics throughout, mine.

How can our Courts treat so unconcernedly so fundamentally a violation of the rights of a citizen of this Commonwealth? A preliminary hearing is not a mere decoration on the cloak of criminal procedure. It is part of the very robe of assumed innocence with which the State invests the accused from the very beginning of the prosecution. It can happen at the preliminary hearing that the accusing witnesses will find themselves to have been mistaken when they now behold the defendant before them and will so declare. It can happen that an explanation by the defendant of seemingly involving circumstances will demonstrate him innocent and he can thus be released and exonerated at once. It can happen after hearing the evidence produced against him, the defendant may suggest the calling of other witnesses whose testimony will cancel out the unfounded suspicion of guilt. All these things are not only possible but they happen every day in the orderly administration of criminal procedure in America.

When the defendant here, John George O'Brien, moved in the Montgomery County Court to quash the indictment because he had been denied the opportunity to be present at the preliminary hearing, the presiding Judge treated the defendant's motion rather cavalierly by observing: "If the contention of the defendant in this case is sustained, it would only be necessary for a criminal to flee and stay out of the jurisdiction until the Statute of Limitations had expired in order to prevent his indictment." This observation was a non sequitur, it was an evasion of the issue, it was, if I may be permitted to say so, a circumlocutory excursion around the foliage of hypothetical irrelevancy. Obviously, if an accused person stays out of the accusing jurisdiction of his own free will, he cannot complain because he was not given a hearing. The law does not wait on fugitives, nor does it give hearings to those

who would be deaf. But where an accused is within jurisdiction of the Court and is easily available, it is contrary to our ideals of fair play and justice to proceed against him without even informing him of the sword hanging invisibly over his head.

And to attempt to excuse this high-handed ex parte proceeding by arguing that the defendant was not harmed because he might have absented himself through flight to another jurisdiction, is to rub the salt of cynicism into the open wound of inflicted injury. Nor can the Montgomery County authorities avail themselves of the excuse that they could not know the whereabouts of the defendant. Never could a process-server be surer of finding his man at home: his address was the county jail!

May a person be held for the Grand Jury at a preliminary hearing when he is absent through no fault of his own? That was the question for the Montgomery County Court to decide. Instead of answering that question directly, the Court went on further hypothetical excursions, the next one being: "If the defendant's contention is sustained, a man might flee to another state, commit a crime, be committed to prison, and prevent his being indicted within the statutory period in the state where his first crime was committed." If a defendant prefers the jails of New Mexico to the jails of Pennsylvania, there is not much use in defending his rights in Pennsylvania. At any rate, if he is immured behind prison walls in New Mexico, the inhabitants of Pennsylvania do not need to fear he may molest them here. But that was not the case with O'Brien. He had not fled to New Mexico. He was on incarcerated refrigeration in Philadelphia County. He was available at an address very well-known and easily reached. At the argument before the Montgomery County Courts he had the right to know why he was not notified of

the preliminary hearing. He had the right to know why his rights were ignored. He had the right to have those rights respected. A prisoner in America does not become flotsam and jetsam on the sea of official calloused indifference. He has the right to fly a flag of distress and our Courts are duty-bound to respect that flag and render aid if aid is constitutionally prescribed.

When the Montgomery County Court refused to quash the indictment, the defendant appealed to the Superior Court. In an extremely able and interesting Opinion, Judge WOODSIDE, speaking for the Superior Court, made clear that preliminary hearings are part of the law of Pennsylvania: "The right of an accused to a preliminary hearing with certain exceptions, *has become a part of the law of this Commonwealth,* and ordinarily such hearing cannot be held in the absence of the defendant. Although this is the general rule there are a number of exceptions."

The exceptions indicated do not cover this case.

In his scholarly discussion which included an excellent historical resumé of preliminary hearings down through the centuries of English law, Judge WOODSIDE said further that where the defendant is not present at a preliminary hearing for reasons beyond his control, the better practice is to obtain leave of the Court before presenting a bill to the Grand Jury: "In some counties it is the practice to obtain permission of the court for the submission of such bills to the grand jury and in other counties it is not. *We think permission of the court should be obtained.* In this way the discretion of the lower court can be exercised, and if that court feels that under the circumstances of the particular case it would not be just to present the bill to the grand jury without first bringing the defendant into the county for a preliminary hearing it can withhold its approval to the submission of the bill and issue a

writ to have the defendant brought into the county for a preliminary hearing."

It was his conclusion, however, that in refusing to quash the indictment, the Montgomery County Court in effect decided retroactively that the District Attorney had the Court's permission to present the bill to the Grand Jury, even though the defendant had not had the opportunity to be present at the preliminary hearing.

The Majority of this Court is of the impression that the Superior Court should have quashed the appeal to that Court and not have discussed the merits at all. I believe it was very necessary to discuss the merits which the Superior Court did in a very capable fashion. I only regret that it did not then quash the indictment on the basis that the lower Court failed in its duty to consider the matter *before* the horse was stolen, instead of considering it *after* the defendant's rights had been taken away on that horse's back.